**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
STAR CHILD II, LLC,            :
                              :
          Plaintiff,          :
                              :
v.                            :   Civ. No. 3:11-CV-01842 (AWT)
                              :
LANMAR AVIATION, INC., and    :
RICHARD A. POLIDORI,          :
                              :
          Defendants.         :
------------------------------x
```

<u>**RULING ON MOTIONS TO DISMISS**</u>

Plaintiff Star Child II, LLC has brought this action against Lanmar Aviation, Inc. and Richard A. Polidori, setting forth claims for negligence (First Count), negligent oversight (Second Count), fraud (Third Count), negligent misrepresentation (Fourth Count), and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a <u>et</u> <u>seq</u>. ("CUTPA") (Fifth Count).  Defendant Richard A. Polidori has moved to dismiss the plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim as to him.  Defendant Lanmar Aviation, Inc. has moved to dismiss the Third, Fourth, and Fifth Counts of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the motions are being denied.

## I. FACTUAL ALLEGATIONS AND BACKGROUND

Star Child II, LLC ("Star Child") is a Delaware LLC with its principal place of business in Brooklyn, New York. Star Child is the owner of a 2006 Socata TBM Aircraft, Bureau Number 850JT, serial number 362 (the "Aircraft"). Lanmar Aviation, Inc. ("Lanmar") is a Delaware corporation with a principal place of business in Groton, Connecticut and thus a citizen of Delaware and Connecticut. Lanmar is a fixed-based operator ("FBO") and a flight charter, airplane maintenance and avionics business. An FBO is a commercial aeronautical business engaged in the sale of products, services, and facilities to aircraft operators, which include: aviation fuels and lubricants; ground services and support; tie-down, hangar, and parking services; aircraft maintenance; and aircraft rental and flight training. Richard A. Polidori ("Polidori") is the president and director of Lanmar. He claims to be a citizen of Florida. He owns businesses and properties throughout the State of Connecticut and his principal place of employment is in Groton, Connecticut.

On August 9, 2011, Star Child flew the Aircraft to the Groton-New London Airport, which is located in Groton, for performance of avionics and maintenance repairs by Lanmar. After the completion of repairs, Lanmar employees moved the Aircraft in front of Lanmar's maintenance hangar and placed chocks against the Aircraft's tires to prevent movement. Later

that day, a fuel truck owned and operated by Lanmar backed towards and struck the Aircraft.  The impact damaged the Aircraft and knocked it off the chocks.  After the accident, Lanmar transported the Aircraft by truck to the Daher-Socata factory in Florida, where it is being repaired and prepared for sale.

The Groton Airport, where the Aircraft was located at the time of the accident, is governed by applicable regulations found at 14 C.F.R. § 139 (the "Regulations").  The Regulations apply to Lanmar because it is an FBO operating out of Groton Airport.  The Regulations govern a wide range of activities, including "procedures for protecting persons and property during storing, dispensing, and handling of fuel and other hazardous substances and materials."  Am. Compl. ¶ 18.  "Additionally, pursuant to Connecticut Department of Transportation policy, FBOs operating out of Groton Airport are held to a set of minimum standards for commercial aeronautical business (the 'Minimum Standards')."  Id. ¶ 15.  The Minimum Standards require Lanmar to develop and maintain standard operating procedures.

Lanmar has the following statement on its website: "Lanmar Aviation has implemented the most stringent safety standards. Your Aircraft is in safe hands while based at Lanmar Aviations FBO."  Id. ¶ 16.  Star Child alleges it relied on this statement when entrusting Lanmar with the Aircraft.  Star Child alleges

that contrary to 14 C.F.R. § 139 and the Minimum Standards, Lanmar had no procedures in place to prevent its fuel trucks from colliding with parked aircraft.

Star Child alleges that Polidori dominates Lanmar to such an extent that there is a total unity of interest and a lack of corporate independence.  Star Child alleges that Lanmar is treated by Polidori as his personal property and run for his private benefit and contends that Lanmar's planes include Polidori's initials in the bureau name and Polidori permits friends and family to use them.  Star Child alleges that all of Lanmar's "important decisions are personally determined by Polidori, as part of a web of companies run by Polidori for his personal benefit." Id. ¶ 27.  Star Child also alleges that past non-arms-length transactions have been engaged in by Polidori for his own enrichment.

Star Child claims that Polidori knew Lanmar was not complying with 14 C.F.R. § 139 or the Minimum Standards and thus Polidori misled consumers by claiming on the Lanmar website that "as an aircraft owner, he has established a high set of standards for every division within Lanmar Aviation."  Id. ¶ 17.

On December 8, 2011, a notice of appearance was filed in this action by Polidori's attorney, Steven Arnold.  On January 5, 2012, Attorney Arnold emailed counsel for Star Child to inform them that "[he had] obtained Mr. Polidori's authorization

to accept any service of process on him personally in this matter." Pl.'s Mem. in Opp. Mot. to Dismiss, Attach. 1, Doc. No. 32-1. Thereafter, when Star Child filed the Amended Complaint, Attorney Arnold was served.

## II. LEGAL STANDARD

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996), cert. denied, 519 U.S. 1006 (1997). Where a defendant challenges "only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196 (2d Cir. 1990). "When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials . . . the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." Seetransport, Wiking, Trader, Schiffanhtsgesellschaft, MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993) (quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam) (citations omitted), cert. denied, 498 U.S. 1068

(1991)). However, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id.

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557 (internal quotation marks omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550

U.S. at 555 (citations omitted).  However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dept. Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)).  "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

**III. DISCUSSION**

**A.  Lanmar's Motion to Dismiss**

Lanmar moves to dismiss the Third, Fourth and Fifth Counts pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  The court concludes

that the factual allegations as to each count suffice to state the claim in question.

## 1. Third Count: Fraud

Lanmar argues that the plaintiff's fraud claim should be dismissed because the plaintiff's allegations fail to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and also because, even if Lanmar's statements on its website were not true, the statements were at most mere "puffery" and thus not actionable under Connecticut law.

To state a claim for fraud under Connecticut law, a plaintiff must allege the following four elements:

> (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury.

Sturm v. Harb Dev., LLC, 298 Conn. 124, 142 (2010) (citation omitted). Additionally, Rule 9(b) requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 1994) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

As to the first element, the plaintiff identifies a specific statement on Lanmar's website that it contends is

false.  The plaintiff alleges that even though it was not true,
"Lanmar's website claimed that it had 'implemented the most
stringent safety standards,' and that Polidori had 'established
a high set of standards for every division within Lanmar
Aviation.'"  Am. Compl. ¶ 50.

Lanmar argues that even if the statements were not true,
they are "puffery" and "statements will not form the basis of a
fraud claim when they are mere 'puffery.'"  Cohen v. Koenig, 25
F.3d 1168, 1172 (2d Cir. 1994).  "Whether an alleged
misrepresentation is an actionable statement of fact or mere
puffery is a matter of law."  Rexall Sundown, Inc. v. Perrigo
Co., 651 F. Supp. 2d. 9, 21 (E.D.N.Y. 2009) (quoting Fl.
Breckenridge, Inc. v. Solvay Pharm., Inc., No. 97-CV-8417, 1998
WL 468753, at *8 (S.D. Fla. Mar. 18, 1998).  Statements that are
"puffery" are unlikely to induce consumer reliance.  See also
Newcal Indus., Inc., 513 F.3d 1038, 1053 (9th Cir. 2008)
(statements not considered puffery unless they are "extremely
unlikely to induce consumer reliance"); Time Warner Cable, Inc.
v. DIRECTV, Inc., 497 F.3d 144, 148 (2d Cir. 2007) ("[T]he
category of non-actionable 'puffery' encompasses visual
depictions that, while factually inaccurate, are so grossly
exaggerated that no reasonable consumer would rely on them in
navigating the marketplace."); Novak v. Kasaks, 216 F.3d 300,
315 (2d Cir. 2000) (statements that inventory situation was "in

good shape" or "under control" when defendants knew the contrary was true were false and misleading) (citation omitted)). Lanmar's statement that it had implemented the most stringent safety standards is outside the ken of mere puffery because "misstatements regarding risk management...are not 'puffery' where...they were 'misrepresentations of existing facts.'" Freudenberg v. E*Trade Fin. Corp., 712 F. Supp. 2d 171, 189 (S.D.N.Y. 2010) (quoting Novak, 216 F.3d at 315)).  Since Lanmar's statement that it had implemented the most stringent safety standards is a statement of fact, it satisfies the first element of a fraud claim under Connecticut law.

As to the second element, the plaintiff alleges that Lanmar's statements were untrue and known to be untrue by Lanmar, as evidenced by the fact that there were no heightened standards for the operation of a fuel truck and the misrepresentations were made for the purpose of attracting business.  This suffices.

As to the third element, the plaintiff alleges that it "relied upon this when in entrusting Lanmar with [the Aircraft]."  Am. Compl. ¶ 57.  As to the fourth element, the plaintiff alleges that Lanmar's fraudulent conduct "proximately caused the [p]laintiff's injuries."  Id. at ¶ 53.  In each instance the allegation suffices.

The plaintiff's allegations also satisfy the requirements of Rule 9(b) because specific statements by Lanmar on its website are identified, and the plaintiff explains that the statements were untrue and known to be untrue and made for the purpose obtaining business so as to provide financial benefit to Lanmar.

Thus, the factual allegations in the Amended Complaint are sufficient to survive a motion to dismiss the fraud claim.

### 2. Fourth Count: Negligent Misrepresentation

In Sovereign Bank v. Licata, 116 Conn. App. 483 (2009), the court stated, with respect to a claim for negligent misrepresentation under Connecticut law:

> Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result....Whether evidence supports a claim of...negligent misrepresentation is a question of fact.

Id. at 502-03 (quoting Centimark Corp. v. Village Manor Assocs. Ltd. P'ship, 113 Conn. App. 509, 519 (2009)) (alterations in original)).

Lanmar argues that the negligent misrepresentation claim should be dismissed for three reasons: first, because "the damage[s] that [p]laintiff seeks to recover do not involve or relate to any representation made or guidance provided by Lanmar

- 11 -

that Plaintiff relied on with respect to the airplane avionics
and maintenance repair transaction," Def.'s Mem. in Supp. Mot.
to Dismiss, Doc. No. 28, 8-9; second, because the Aircraft "was
not 'based' at Lanmar, which is the context of Lanmar's alleged
misrepresentation," id. 9; and third, because even if Lanmar's
statements on its website were not true, the statements were at
worst mere "puffery" and thus not actionable under Connecticut
law.

    As to Lanmar's first argument, Lanmar points to the fact
that the plaintiff alleges that the repairs were completed at
the time the Aircraft was damaged.  See id. 9.  However, that is
immaterial if in fact the plaintiff has otherwise alleged facts
that could establish the elements of negligent
misrepresentation, which it has.

    Lanmar also argues that the plaintiff fails to state a
claim of negligent misrepresentation because the Aircraft was
not "based" at "Lanmar Aviations FBO."  However, the alleged
misrepresentations relied on by the plaintiff for this claim are
that "Lanmar held itself as complying with 'stringent safety
standards' while Polidori allegedly 'established a high set of
standards for every division within Lanmar Aviation."  Am.
Compl. ¶ 56.  Lanmar appears to argue that the statements relied
on by the plaintiff should be understood to mean that stringent
safety standards and a high set of standards for every division

only exist if one's aircraft is based at Lanmar Aviations FBO. Such a conclusion at this stage of the case, however, can be reached only if one draws all inferences in favor of Lanmar, as opposed to in favor of the plaintiff.

As to Lanmar's argument with respect to mere puffery, the court finds this argument unpersuasive, as discussed in connection with the Third Count.

Thus, the plaintiff has alleged facts sufficient to state a claim for negligent misrepresentation, and the motion to dismiss the Fourth Count is being denied.

### 3. Fifth Count: CUTPA

"A claim under CUTPA requires that [the] plaintiff allege that [the] defendant engaged in 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce,'" where trade or commerce is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property..." PTI Assocs., LLC v. Carolina Int'l Sales Co., 3:09-CV-849, 2010 WL 363330, at *5 (D. Conn. Jan. 26, 2010) (quoting Conn. Gen. Stat. § 42-110b).  The Connecticut Supreme Court has adopted the following factors, known as the "cigarette rule," to determine whether a trade practice is unfair or deceptive:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether is causes substantial injury to consumers, competitors, or other businessmen.

Harris v. Bradley Memorial Hosp. and Health Center, Inc., 296 Conn. 315, 350 (2010).  With respect to the third factor, "[t]o justify a finding of unfairness the injury...must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided."  A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 216 (1990).

"A CUTPA plaintiff need not establish all three criteria to demonstrate unfairness. Instead, a practice may be shown to be unfair either 'because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'" Fabri v. United Technologies Intern., Inc., 387 F.3d 109, 120 (2d. Cir. 2004) (quoting Chershire Mortg. erv. Inc. v. Montes, 223 Conn. 80, 104 (1992)).

Lanmar argues, relying on A-G Foods, Inc., 216 Conn. at 217, that the plaintiff has not stated a CUTPA claim because the underlying claim is grounded solely in negligence, and negligent acts are insufficient to establish the first prong of the

cigarette rule because negligent acts do not offend public policy, and insufficient to satisfy the second prong because negligent acts in general are not immoral, unethical, oppressive or unscrupulous.  In addition, Lanmar argues that negligent acts cannot establish the requisite "substantial injury" to consumers or competitors as to the third prong.

However, here the plaintiff does not allege merely negligence.  In connection with the CUTPA claim, the plaintiff alleges that Lanmar and Polidori engaged in a "systematic practice of shirking basic safety standards," Am. Compl. ¶ 60., and that is sufficient to allege a practice that offends public policy as well as one that is immoral, unethical, oppressive or unscrupulous.  With respect to the third prong, the plaintiff has alleged an injury that is substantial, and it has also alleged a practice as to which there are no countervailing benefits to consumers provided by the practice.  In addition, drawing all reasonable inferences in favor of the plaintiff, the plaintiff was unaware of the existence of the systematic practice or shirking of basic safety standards and thus could not have reasonably avoided the injury it suffered.

Lanmar also argues that the plaintiff has not stated a claim for a CUTPA violation because it has not alleged facts that could establish that it "suffered an 'ascertainable loss' due to a CUTPA violation."  Collins v. Anthem Health Plans, Inc.

275 Conn. 309, 334-35 (2005).  The defendant points to the fact that the damage to the Aircraft occurred after the alleged avionic and maintenance repairs were completed and the Aircraft was parked on the outside ramp for its return flight.  Lanmar argues that, consequently, the damage to the Aircraft "was unrelated to Lanmar's alleged avionics and maintenance repair services."  Def.'s Mem. 13.  Thus, Lanmar contends that the damage to the Aircraft does not arise out of trade or commerce conducted by Lanmar and, for that reason, the plaintiff did not sustain an ascertainable loss due to a CUTPA violation. However, drawing all inferences in favor of the plaintiff, a business or consumer relationship existed between the plaintiff and Lanmar at the time of the damage to the Aircraft.  The plaintiff alleges in substance that it turned over the Aircraft to the possession and control of Lanmar for the avionics and maintenance repairs and that the Aircraft was on Lanmar's ramp in front of Lanmar's maintenance hangar when it was damaged, still in the possession and under the control of Lanmar.

Thus, the plaintiff has alleged facts sufficient to state a claim for a CUTPA violation and the motion to dismiss the Fifth Count is being denied.

### B.  Polidori's Motion to Dismiss

#### 1. Service of Process

Polidori argues that he was improperly served.  However, his counsel advised counsel for Star Child that Polidori had authorized him to accept service of process on his behalf, and Polidori's counsel accepted service of the Amended Complaint. Thus, Polidori has waived his ability to raise this ground for dismissal.

#### 2. Piercing the Corporate Veil; Personal Jurisdiction

Polidori argues the plaintiff failed to state a claim upon relief can be granted with respect to its veil piercing allegations and, in addition, that the court lacks jurisdiction over him under Connecticut's long arm statute.  However, the court concludes that the plaintiff has alleged facts that could establish a basis for piercing Lanmar's corporate veil, and that because the plaintiff has properly alleged that Lanmar committed tortious acts against the plaintiff in Connecticut, the court has jurisdiction over Polidori under Connecticut's long arm statute.

#### a.  Piercing the Corporate Veil

Under Connecticut law, when "the corporation is so manipulated by an individual or another corporate entity as to become a mere puppet or tool for the manipulator, justice may require the courts to disregard the corporate fiction and impose

liability on the real actor.  Wenban Estate, Inc. v. Hewlett,
193 Cal. 675, 697, 227 P. 723; Minifie v. Rowley, 187 Cal. 481,
488, 202 P. 673; United Transit Co. v. Nunes, 209 A.2d 215, 219
(R.I.), and cases cited; see Starr Burying Ground Ass'n v. North
Lane Cemetery Assn., 77 Conn. 83, 92, 58 A. 467."  Zaist v.
Olson, 154 Conn. 563, 575 (1967).  "It is because of this that
there have arisen what are called the 'instrumentality' or
'identity' rules."  Id. (citations omitted).

> The instrumentality rule requires . . . proof of
> three elements: (1) Control, not mere majority or
> complete stock control, but complete domination, not
> only of finances but of policy and business practice
> in respect to the transaction attacked so that the
> corporate entity as to this transaction had at the
> time no separate mind, will or existence of its own;
> (2) that such control must have been used by the
> defendant to commit fraud or wrong, perpetrate the
> violation of a statutory or other positive legal duty,
> or a dishonest or unjust act in contravention of [the]
> plaintiff's legal rights; and (3) that the aforesaid
> control and breach of duty must proximately cause the
> injury or unjust loss complained of.
> The identity rule has been stated as follows: If
> [the] plaintiff can show that there was such a unity
> of interest and ownership that the independence of the
> corporations had in effect ceased or had never begun,
> an adherence to the fiction of separate identity would
> serve only to defeat justice and equity by permitting
> the economic entity to escape liability arising out of
> an operation conducted by one corporation for the
> benefit of the whole enterprise.

Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc., 187 Conn.
544, 552-54 (1982) (citations and internal quotation marks
omitted).  "Whether the circumstances of a particular case
justify the piercing of the corporate veil presents a question

of fact." <u>Naples v. Keystone Bldg. & Dev. Corp.</u>, 295 Conn. 214, 234 (2010) (internal quotation marks omitted).

Here, the plaintiff has pled sufficient facts, in paragraphs 28 through 30 of the Amended Complaint, to state a claim for piercing Lanmar's veil and imposing liability on Polidori.  With respect to the instrumentality rule, the plaintiff has alleged that Polidori totally dominates Lanmar and during the time of the transaction that gives rise to the plaintiff's claim Lanmar had no separate mind or existence of its own.  The plaintiff has also alleged that Polidori used his control over Lanmar to commit fraud, which it alleges proximately caused the damages suffered by the plaintiff.  With respect to the identity rule, the plaintiff has alleged that Polidori used Lanmar as his personal property, running it for his private benefit.  It further alleges that Lanmar and Polidori operated with a total unity of interest such that Lanmar's independence, in effect, ceased.

### b.  Long-arm Jurisdiction

The exercise of long-arm jurisdiction under Connecticut law requires a two-part inquiry.  "First, we must determine whether the defendant is amenable to service of process under Connecticut's long-arm statute.  Second, we must assess whether the statutory authority comports with due process."  <u>Edberg v. Neogen Corp.</u>, 17 F. Supp. 2d 104, 110 (D. Conn. 1998).  The

Connecticut long-arm statute applicable to nonresident

individuals provides, in relevant part that:

> a court may exercise personal jurisdiction over any
> nonresident individual,... who in person or through an
> agent: (1) Transacts any business within the state; (2)
> commits a tortious act within the state...; (3) commits a
> tortious act outside the state causing injury to person or
> property within the state; (4) owns, uses, or possesses any
> real property situated within the state... (A) regularly
> does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial
> revenue from goods used or consumed or services rendered,
> in the state, or (B) expects or should reasonably expect
> the act to have consequences in the state and derives
> substantial revenue from interstate or international
> commerce...

Conn. Gen. Stat. § 52-59b. Only one of the provisions of § 52-

59b needs to be satisfied.

The plaintiff has alleged that Lanmar committed a tortious

act in Connecticut that caused injury to the plaintiff by

committing fraud against the plaintiff (Third Count), by making

negligent misrepresentations to the plaintiff (Fourth Count) and

by injuring the plaintiff in violation of CUTPA (Fifth Count).

"[W]here an individual defendant has so dominated and

disregarded the corporate form that the corporation has

primarily transacted the individual's personal business rather

than its own corporate business, a court may pierce the

corporate veil to assert personal jurisdiction over the

individual." Hale Propeller, L.L.C. v. Ryan Marine Prod. Pty.,

Ltd., 98 F. Supp. 2d 260, 264 (D. Conn. 2000). "Establishing the

exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981).  Unlike piercing the corporate veil for liability purposes, it is not necessary to show "that the shell was used to commit a fraud." Id.  Thus, the plaintiff has established that the court has personal jurisdiction over Polidori.

In light of the foregoing, the court need not consider the additional arguments advanced by the plaintiff as to why the court has jurisdiction over Polidori.  In addition, although Polidori makes reference in his memorandum in support of the motion to dismiss to the requirement that the statutory authority comport with due process, he does not argue that the exercise of long-arm jurisdiction over him in this case would not comport with due process.  In any event, the allegations in the Amended Complaint establish that the requirements of due process are satisfied here.  The plaintiff alleges that Polidori owns businesses and properties throughout the state of Connecticut and that his principal place of employment is in Groton, Connecticut.  In such circumstances it is apparent that the defendant has minimum contacts with Connecticut and the assertion of jurisdiction would comport with traditional notions

of fair play and substantial justice.  See In Re Perrier Bottled
Water Litig., 754 F. Supp. 264, 267-68 (D. Conn. 1990) (citing
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 286 (1980)
("A two-step analysis is used when determining whether the
exercise of personal jurisdiction would offend Due Process: (1)
does the defendant have minimum contacts with the forum; and, if
so, (2) does the assertion of jurisdiction comport with
traditional notions of fair play and substantial justice.")).

**IV. CONCLUSION**

For the reasons set forth above, Defendant Lanmar Aviation,
Inc.'s Motion to Dismiss Third, Fourth, and Fifth Counts of
Plaintiff's Amended Complaint (Doc. No. 28) is hereby DENIED,
and Defendant Richard A. Polidori's Motion to Dismiss (Doc. No.
30) is hereby DENIED.

It is so ordered.

Dated this 16th day of March, 2013, at Hartford,
Connecticut.


                                _____/s/_____
                                    Alvin W. Thompson
                                United States District Judge